UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EVE SILVESTRI,

                              Plaintiff,

        v.

KOHL'S DEPARTMET STORES, INC., *et al.*,

                              Defendants.

---

No. 19-CV-10550 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Sheila S. Rosenrauch, Esq.
Sobo & Sobo LLP
Middletown, NY
*Counsel for Plaintiff*

Todd R. Harris, Esq.
Coughlin & Gerhart LLP
Binghamton, NY
*Counsel for Defendants*

Richard J. Femia, Esq.
Goldberg Segalla LLP
Garden City, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Eve Silvestri ("Plaintiff") brings this Action against Kohl's Department Stores, Inc. and

Kohl's Illinois, Inc. (collectively, "Kohl's" or "Defendants"), alleging that Plaintiff was injured

as a result of Defendants' negligence having tripped on a display at a Kohl's store.  (*See

generally* Not. of Removal (Dkt. No. 6) Ex. A ("Compl.") (Dkt. No. 6-1).)  Before the Court is

Defendants' Motion for Summary Judgment (the "Motion").  (Not. of Mot. (Dkt. No. 30).)  For

the following reasons, Defendants' Motion is granted.

I.  Background

A.  Factual Background

The following facts and procedural history are taken from Defendants' statements

pursuant to Local Civil Rule 56.1 (Def.'s Local Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No.

31), Plaintiff's Response to Defendants' 56.1 Statement (Pl.'s Response to Defs.' 56.1 Statement

("Pl.'s 56.1 Resp.") (Dkt. No. 33)), Defendants' Reply to Plaintiff's Response (Defs.' Reply

Statement ("Defs.' 56.1 Reply") (Dkt. No. 36)), and the admissible evidence submitted by the

Parties.  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quotation marks omitted).  The

facts as described below are not in dispute, except where indicated.

On December 23, 2015, Plaintiff visited Kohl's Department Store in Middletown, New

York, with two friends.  (Defs.' 56.1 ¶ 2; Pl.'s 56.1 Resp. ¶¶ 2, 31; Defs.' 56.1 Reply ¶ 31.)  At

this particular store, the registers are located in the front by the entrance and exit.  (Pl.'s 56.1

Resp. ¶ 20; Defs.' Reply ¶ 20.)  "A large aisle runs perpendicular and adjacent to the registers so

that the premises departments are on one side of the large aisle and the registers are on the

other."  (Pl.'s 56.1 Resp. ¶ 21; Defs.' Reply ¶ 21.)  In the center aisle, there were some number

of displays, though the Parties dispute the number of such displays.  (*See* Pl.'s 56.1 Resp. ¶ 22;

Defs.' Reply ¶ 22.)

While Plaintiff was "walking through a store isle, she tripped and fell over an object that

touched her foot."  (Defs.' 56.1 ¶ 3; Pl.'s 56.1 Resp. ¶ 3.)  Immediately preceding the accident,

Plaintiff "saw [a] nearly five[-]foot display directly in front of her."  (Defs.' 56.1 ¶ 5; Pl.'s 56.1

Resp. ¶ 5.)  Nonetheless, Plaintiff "did not see the object that she believed she tripped on prior to

falling."  (Defs.' 56.1 ¶ 6; Pl.'s 56.1 Resp. ¶ 6.)  Plaintiff stated, however, "that she believe[s]

that two metal bars are what caused her to fall because they felt 'about the same size as the things that hit [her] foot.'" (Defs.' 56.1 ¶ 10; Pl.'s 56.1 Resp. ¶ 10; *see also* Defs.' 56.1 Reply ¶ 10.) Plaintiff described the bars as "tube-like" and having the same size as a quarter in diameter. (Pl.'s 56.1 Resp. ¶¶ 27, 29; Defs.' Reply ¶¶ 27, 29.)

The Parties dispute some additional facts regarding the actual accident itself, including its precise cause as well as the surroundings of the accident site. Defendants assert that Plaintiff was "equivocal" and could not identify exactly on what she tripped. (Defs.' 56.1 ¶ 4 (citing Not. of Mot. Ex. F ("Silvestri Depo. Tr."), at 66:13–18 (Dkt. 30-7)).) Plaintiff, on the other hand, asserts that she "she fell on [a] gold or brown bar sticking out of the bottom of a display that appeared to be placed on a platform." (Pl.'s 56.1 Resp. ¶ 4 (citing Silvestri Depo. Tr. 38:2–14, 66:9–18, 69:2–13, 106:15–24); *see also* Silvestri Depo Tr. 106:25–107:4.) Bound up in the confusion and dispute regarding the cause of the accident is the number of bars at issue. Plaintiff avers that "there were two bars, [but] only the first bar was involved in the fall." (Pl.'s 56.1 Resp. ¶ 30.) Given that Defendants dispute the cause in its entirety, they claim that this fact remains in dispute. (Defs.' 56.1 Reply ¶ 30.) Finally, the Parties dispute whether Plaintiff knew the position of the metal bars in question prior to Plaintiff's accidentally contacting one of them. (*Compare* Defs.' 56.1 ¶ 7, *with* Pl.'s 56.1 Resp. ¶ 7.)

Following her accident, Plaintiff "got off the floor," "proceeded to purchase her selected items," and "went out to eat dinner at a restaurant." (Defs.' 56.1 ¶¶ 11, 12; Pl.'s 56.1 Resp. ¶¶ 11, 12.) Before she left the store, Plaintiff spoke with Danielle Brooks ("Brooks"), who was the store's manager overseeing the store's day-to-day operation. (Defs.' 56.1 ¶¶ 14–15; Pl.'s 56.1 Resp. ¶¶ 14–15.) The Parties implicitly dispute what was said during that conversation. Brooks testified that she repeatedly asked Plaintiff for details about the accident, but Plaintiff would not

provide answers.  (Defs.' 56.1 ¶ 16; Pl.'s 56.1 Resp. ¶ 16; *see also* Defs.' 56.1 Reply ¶ 47.)  On

the other hand, Plaintiff testified that she tried to show an unnamed employee the accident site,

but the unnamed employee claimed to be too busy to assist Plaintiff and go to the location of the

accident to determine the cause of the damage.  (Pl.'s 56.1 Resp. ¶¶ 46, 47; Defs.' 56.1 Reply

¶¶ 46, 47.)  The incident report filed—which was filled out by and signed by Plaintiff —reads:

"No worker came over to help.  Customers are all that help [sic] as I sat 5-10 mins [sic] after

fall."  (Not. of Mot. Ex. H 2 (Dkt. No. 30-9).)

    B.  Procedural History

    Plaintiff filed her Complaint on December 14, 2018, in the Supreme Court of New York,

Orange County.  (*See* Compl.)  Defendants filed an Answer on March 29, 2019.  (*See* Not. of

Removal ¶ 4; *id.* Ex. B ("Answer") (Dkt. No. 6-1).)  On this same day, Defendants served a

demand on Plaintiff seeking the amount of damages sought pursuant to New York Civil Practice

Law and Rules § 3107(c).  (*See* Not. of Removal ¶ 8; *id.* Ex. C (Dkt. No. 6-3).)[1]  On September

30, 2019, Plaintiff filed the Bill of Particulars, which failed to set forth any specific amount with

regard to the damages sought.  (*See* Not. of Removal ¶ 9; *id.* Ex. D (Dkt. No. 6-4).)

Subsequently, Plaintiff filed a response to Defendants' CPLR 3017(c) demand, which similarly

did not disclose an amount.  (*See* Not. of Removal ¶ 13; *id.* Ex. E (Dkt. No. 6-5).)

    On November 18, 2019, Defendants removed the case to this Court based on diversity

jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  (Not. of Removal ¶¶ 24–28.)

---

[1] Defendants' Notice states that this demand was served on March 28, 2019, rather than March 29, 2019.  (*See* Not. of Removal ¶ 8.)  However, documentary evidence shows the demand was served on March 29, 2019, the same day as the Answer.  (*See* Not. of Removal Ex. C.)

On December 16, 2021, Defendants filed a notice of summary judgment and accompanying papers.  (*See* Not. of Mot.; Defs.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Dkt. No. 30-10); Defs.' 56.1.)  On January 20, 2022, Plaintiff filed her response in opposition to Defendants' 56.1 statement as well as her Memorandum of Law in opposition to the Motion.  (*See* Pl.'s 56.1 Resp.; Pl.'s Mem. of Law in Opp. of Mot. for Summ. J. ("Pl.'s Mem.") (Dkt. No. 34).)  On February 3, 2022, Defendants filed their Memorandum of Law in reply as well as a response to Plaintiff's 56.1 reply.  (*See* Defs.' Reply Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Reply Mem.") (Dkt. No. 35); Defs.' 56.1 Resp.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).[2]

B.  Analysis

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL

---

[2] Notwithstanding the "distinction between the summary judgment standard under the Federal Rules of Civil Procedure and the applicable standard under the law of New York State" with respect to the movant's and non-movant's respective burdens in personal injury actions, *Sauro v. Costco Wholesale Corp.*, No. 18-CV-2091, 2019 WL 3046852, at *6 (E.D.N.Y. May 29, 2019), *report and recommendation adopted*, 2019 WL 3037069 (E.D.N.Y. July 10, 2019), "the Second Circuit has affirmed that 'the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions,' and are governed by Federal Rule of Civil Procedure 56 rather than state procedural law," *Shimunov v. Home Depot U.S.A, Inc.*, No. 11-CV-5136, 2014 WL 1311561, at *3 (E.D.N.Y. Mar. 28, 2014) (quoting *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (summary order)).

3448578, at *3 (E.D.N.Y. June 17, 2016) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)); *see also Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 385 (S.D.N.Y. 2015) ("To prevail on a negligence claim, the plaintiff must establish '(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" (quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985))).

In slip-and-fall cases under New York substantive law, two distinct duties are implicated: the "duty to warn of [a] hazard," and the "duty to maintain the premises in a reasonably safe condition." *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021) (emphasis and quotation marks omitted). The latter "may include" the former, *Zubillaga v. Findlay Teller Hous. Dev. Fund Corp.*, 153 N.Y.S.3d 14, 18 (App. Div. 2021) (citing *Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976)); *see also Basso*, 352 N.E.2d at 875 (Breitel, C.J., concurring) (observing that "[t]he duty owed to an invitee . . . to use due care to keep the property in a reasonably safe condition so that invitees will not unnecessarily be exposed to danger . . . includes an obligation to warn an invitee of any hidden danger if the possessor is unable to maintain the property in a reasonably safe condition" (citations omitted)), but they are nonetheless distinct, *see Borley*, 22 F.4th at 82; *Bailey v. Seaboard Barge Corp.*, 385 F. Supp. 2d 310, 313 (S.D.N.Y. 2005) (recognizing that "[i]t is well settled law that a landowner has a duty to exercise reasonable care under the circumstances" as well as a separate duty "to provide a reasonably safe premises"). Indeed:

> The First Department has recognized that the duty to warn and the duty to maintain the premises in a reasonably safe condition are "analytically distinct" and that liability may be found "even where the obviousness of the risk negates any duty to warn." *Cohen v. Shopwell, Inc.*, 765 N.Y.S.2d 40, 42 (App. Div. 2003). More explicitly, the Second Department has held that "proof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure to maintain the property in a safe condition" and that any decisions to the contrary "should no longer be followed." *Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 43 (App. Div. 2003). The Third and Fourth Departments have reached similar conclusions as well. *See MacDonald v. City of Schenectady*, 761 N.Y.S.2d 752,

754 (App. Div. 2003) ( "[T]he open and obvious nature of an allegedly dangerous condition does not, standing alone, necessarily obviate a landowner's duty to maintain his or her property in a reasonably safe condition."); *Pelow v. Tri–Main Dev.*, 757 N.Y.S.2d 653, 655 (App. Div. 2003) ("Contrary to defendant's contention, the fact that the slippery condition may have been open and obvious does not entitle defendant to summary judgment dismissing the complaint. The issue whether a condition was readily observable impacts on plaintiff's comparative negligence and does not negate defendant's duty to keep the premises reasonably safe.").

*Niles v. 1109-1113 Manhattan Ave. Partners, LLC*, No. 13-CV-5427, 2015 WL 6674833, at *3 (E.D.N.Y. Oct. 30, 2015).

With regard to the former, "[g]enerally, under New York law, 'landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition.'" *Chaney*, 115 F. Supp. 3d at 386 (quoting *Tagle v. Jakob*, 763 N.E.2d 107, 108–09 (N.Y. 2001)). The reasonable care standard "account[s] for the possibility of injury to others, the seriousness of such injury, and the burden of avoiding such risk." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 117 (2d Cir. 2000) (citing *Basso*, 352 N.E.2d at 872). Accordingly, to establish a landowner's negligence with respect to its duty to maintain his or her property in a safe condition, a "plaintiff must demonstrate that [the] defendant created the offending condition or that [the] defendant had actual or constructive notice of the condition." *Gonzalez v. K-Mart Corp.*, 585 F. Supp. 2d 501, 503 (S.D.N.Y. 2008) (quoting *Pinnock v. Kmart Corp.*, No. 04-CV-3160, 2005 WL 3555433, at *2 (S.D.N.Y. Dec. 29, 2005)).

With regard to the latter, "[a] landowner . . . has the duty to warn of potentially dangerous conditions that are not readily observable." *McDermott v. Santos*, 98 N.Y.S.3d 646, 649 (App. Div. 2019) (first citing *Martino v. Stolzman*, 964 N.E.2d 399, 402 (N.Y. 2012); and then citing *Sermos v. Gruppuso*, 944 N.Y.S.2d 245, 246 (App. Div. 2012)). In other words, "'a landowner has no duty to warn of an open and obvious danger' . . . 'that could not be overlooked by any

9

observer reasonably using his or her ordinary senses.'"  *Niles*, 2015 WL 6674833, at *2 (first

quoting *Tagle*, 763 N.E.2d at 109–10; and then quoting *Garrido v. City of New York*, 779

N.Y.S.2d 208, 209 (App. Div. 2004)).  Indeed, the New York Court of Appeals has held that "a

landowner's duty to warn of a latent, dangerous condition on his property is a natural counterpart

to his duty to maintain his property in a reasonably safe condition."  *Galindo v. Town of*

*Clarkstown*, 814 N.E.2d 419, 421 (N.Y. 2004) (citation omitted).

Each duty engenders distinct inquiries, but because the duty to warn is "[e]ncompassed"

in the duty of reasonable care, *Comeau v. Wray*, 659 N.Y.S.2d 347, 348 (App. Div. 1997),

negligence claims arising from a visitor's slip and fall will often center on one duty or the other

depending on the facts underlying the action.  Specifically, slip and fall actions concerning

conditions arising from incidental spills generally focus on the duty of reasonable care, which

demands review of whether the property owner in fact created the so-called condition and or

whether the property owner had actual or constructive notice of the condition, *see, e.g.*, *Strass*,

2016 WL 3448578, at *4–8; by contrast, negligence claims concerning permanent or semi-

permanent fixtures on which visitors trip generally focus on the duty to warn, which demands

inquiry into whether the condition was open and obvious and whether it was inherently

dangerous, *see, e.g.*, *Chaney*, 115 F. Supp. 3d at 386–390.[3]

Defendants argue that they did not have notice of the condition, that Plaintiff cannot

definitively identify the cause of her accident, and that because the condition was open and

---

[3] This decision tree also makes logical sense: when the case concerns a permanent or semi-permanent fixture, the landowner very likely created the condition precedent, and "[w]here the defendant created the dangerous condition, actual notice is presumed."  *Gayman v. Pathmark Stores, Inc.*, No. 04-CV-7882, 2005 WL 1540812, at *3 (S.D.N.Y. June 30, 2005) (quoting *Rose v. Da Ecib USA*, 686 N.Y.S.2d 19, 21 (App. Div. 1999)).

obvious and not inherently dangerous, Defendants did not violate either duty.  (*See generally* Defs.' Mem.; Defs.' Reply Mem.)  Plaintiff rebuts these arguments by arguing that material issues of fact exist with respect to Defendants' notice and the nature of the condition; Plaintiff also argues that the cause of the accident can be inferred so as to obviate causation issues.  (*See generally* Pl.'s Mem.)  The Court considers these arguments as needed.

### 1.  Duty to Warn

#### a.  Open and Obvious

"For a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses."  *Garrido*, 779 N.Y.S.2d at 209; *see also Chaney*, 115 F. Supp. 3d at 386 ("To establish that a condition was 'open and obvious,' the landowner must demonstrate 'that the condition . . . was readily observable by the plaintiff employing the reasonable use of his senses.'" (alteration in original) (quoting *Powers v. 31 E 31 LLC*, 998 N.Y.S.2d 23, 25 (App. Div. 2014)).  An inquiry a condition's openness and obviousness "cannot be divorced from the surrounding circumstances." *Mazzarelli v. 54 Plus Realty Corp.*, 864 N.Y.S.2d 554, 555 (App. Div. 2008).  While the question of "open and obvious is generally fact-specific and thus usually a jury question, a court may determine that a [condition] was open and obvious as a matter of law when the established facts compel that conclusion, and may do so on the basis of clear and undisputed evidence." *Tagle*, 763 N.E.2d at 110 (citations omitted).

Defendants argue that the alleged cause of her injury was open and obvious.  (*See* Defs.' Mem. 10–13; Defs.' Reply Mem. 5–7.)  Plaintiff argues that the condition was not open and obvious, as it was "within the gap between the displays, where it would have been hidden from view until the Plaintiff turned into that gap" and that "seasonal displays . . . divert[ed] customers'

11

attention away from the floor." (Pl.'s Mem. 12.) The Court finds that there is no material fact in dispute, as the record compels the conclusion that the condition was open and obvious.

First, Plaintiff admitted to observing the display before tripping and falling. (Defs.' 56.1 ¶ 5; Pl.'s 56.1 Resp. ¶ 5; *see also* Silvestri Depo. Tr. 50:11–14.) "[A]lthough not dispositive of openness and obviousness," Plaintiff's admission to viewing the display "is germane." *Chaney*, 115 F. Supp. 3d at 387. Second, Plaintiff can point to no evidence in the record suggesting that the bars were in fact obscured from view. Open and obvious inquiries often take into account whether the specific condition was visible because of poor lighting conditions, *see Barone v. Risi*, 9 N.Y.S.3d 620, 622 (App. Div. 2015) ("While the nature of the terrain may have been open and obvious during the day, the same cannot be said for late night, where there was little, if any lighting."); *Clark v. AMF Bowling Centers, Inc.*, 921 N.Y.S.2d 273, 274 (App. Div. 2011) (holding that "[i]n view of the surrounding circumstances, which included dim lighting and the unusual way in which certain furniture was placed, the evidence submitted by the defendant did not eliminate triable issues of fact as to whether the table was an open and obvious." (collecting cases)), or other objects obscuring a condition from a visitor's view, *see Femenella v. Pellegrini Vineyards, LLC*, 792 N.Y.S.2d 122, 122 (App. Div. 2005) (denying summary judgment because a condition was "surrounded by hedges that may have blocked [the plaintiff's] view of the edge of the patio"); *Mauriello v. Port Auth. of N.Y. & N.J.*, 779 N.Y.S.2d 199, 200 (App. Div. 2004) (including whether a visitor's view was "obscured by crowds of people in the terminal" as relevant to the open and obvious analysis). In this case, Plaintiff did not recall having any difficulty seeing as a result of dim or poor lighting conditions. (*See* Silvestri Depo. Tr. 144:19–22.) Similarly, Plaintiff conceded that immediately preceding the accident, she was "the only

person walking" in the space in which the accident occurred, (*id.* at 60:20–25), and otherwise made no reference to other obstacles or obstructions to viewing the display, (*see generally id.*).

Plaintiff nonetheless argues in her opposition that the alleged cause of the accident "would have been hidden from view" because it was "within the gap between the displays." (Pl.'s Mem. 12.) Plaintiff cites neither caselaw nor record evidence to substantiate this supposition.[4] Accordingly, the Court presumes Plaintiff relies on her testimony, and specifically the portion thereof that speaks to the layout of the store and the location of the display and allegedly protruding bars, to support this argument.

In the first instance, "unsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment." *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015) (collecting cases); *see also JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 616 (S.D.N.Y. 2016) ("[A] nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." (alteration omitted) (quoting *Fincher v. Depository Trust & Clearing Corp.*, No. 06-CV-9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008)). Even if the Court were to credit Plaintiff's opaque testimony, however, it could not. Plaintiff attested to the fact that the display at issue was in the middle of the aisle, (*see* Silvestri Depo. Tr. 52:3–5), and the distance between that display and another display—which created the so-called "gap" through which Plaintiff walked, and the latter of which would have obscured the cause of the accident—was "[e]nough for both . . . a shopping cart and a human . . . to get through," (*id.* at 60:17–19). In other words, this "gap" meant that any metallic protrusion—to the extent it existed—was not hidden from

---

[4] Indeed, Plaintiff did not submit any evidence in addition to her opposition to Defendants' Motion.

view for visitors like Plaintiff.  Therefore, the evidence in the record makes clear that the display

is "readily observed by the reasonable use of one's senses."  *Dawson v. Cafiero*, 739 N.Y.S.2d

190, 191 (App. Div. 2002) (citations omitted).[5]

      Plaintiff tries to bypass this point by alleging that distractions obscured her view,

rendering the condition not open and obvious.  (*See* Pl.'s Mem. 11–13.)  Unquestionably, "[a]

condition that is ordinarily apparent to a person making reasonable use of his or her senses may

be rendered a trap for the unwary where . . . the plaintiff is distracted[.]"  *Mullen v. Helen Keller*

*Servs. for the Blind*, 23 N.Y.S.3d 350, 352 (App. Div. 2016) (citations and quotation omitted)

(collecting cases).  To that end, Plaintiff points to *Montalbano v. Wal-Mart Assocs., Inc.*, No. 19-

CV-6584, 2021 WL 200565 (E.D.N.Y. Jan. 20, 2021) and *Michalski*, 225 F.3d 113.  (*See* Pl.'s

Mem. 12–13.)

---

[5] Plaintiff also states that the bar that allegedly caused her accident was a "goldish or copper kinda [sic] of brown color."  (Silvestri Depo. Tr. 66:10–11.)  Courts have previously found that "a stark color contrast" between the purportedly dangerous condition and its backdrop—in this case, the floor—can similarly support that the condition was open and obvious.  *See Miller v. Costco Wholesale Corp.*, 4 N.Y.S.3d 281, 282–83 (App. Div. 2015) (holding that a wheel stop that caused the plaintiff's injury was "open and obvious" based at least in part on its "contrast to the color of the pavement to which it was affixed"); *Gallo v. Hempstead Tpk., LLC*, 948 N.Y.S.2d 660, 661 (App. Div. 2012) (holding similarly).  The record is silent about the color of the floor; rather, Plaintiff testifies only that the store used "[h]ard floor."  (Silvestri Depo. Tr. 83:24.)  However, courts may "take judicial notice of the normal things of life," *Erie Cnty. Bd. of Soc. Welfare on Complaint of McCarter v. Holiday*, 220 N.Y.S.2d 679, 680 (App. Div. 1961), including styles of architecture design, *see Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 106 n.20 (2d Cir. 2014) (taking judicial notice of the popular architectural styles of homes); *cf. Chaney*, 115 F. Supp. 3d at 388 & n.7 (collecting cases to demonstrate the myriad phenomena that courts can take judicial notice of, including citing *Zalewski*, for sake of the contrast of a power charger and its surroundings in analyzing whether a condition is open and obvious or inherently dangerous).  Therefore, the Court could rightly take judicial notice that hard floors in department stores are rarely the golden brown or copper of the alleged cause of Plaintiff's injury, which would itself suggest that a stark color contrast existed, militating toward a finding of openness and obviousness.

The Court agrees with Defendants that these cases are readily distinguishable for multiple reasons, (*see* Defs.' Reply Mem. 6–7).  For example, the *Montalbano* court credited the influence of "the store's signage and merchandise *above* eye level" that would "foreseeably distract[]" a patron's "gaze."  2021 WL 200565, at *3 (emphasis added).  Plaintiff does not make mention in her deposition of distractions above eye level; indeed, Plaintiff concedes that the displays were approximately shoulder-height.  (*See* Silvestri Depo. Tr. 50:15–24.)  In *Montalbano*, it was also relevant that Wal-Mart had a policy against the form of display that allegedly tripped the patron, which the court believed "may suggest" that the form of the display that allegedly caused the trip was in fact a tripping hazard.  *See* 2021 WL 200565, at *3.  Plaintiff puts forward no such analogous policy that could raise a triable issue of fact here.

*Michalski* is similarly inapplicable.  (Def.'s Reply Mem. 6–7.)  In *Michalski*, the defendant store stacked merchandise twenty feet high, thereby distracting shoppers from a condition four inches off the floor.  *See* 225 F.3d at 122.  Once again, the degree to which a visitor must modify her gaze to see such merchandise is simply inapposite to this Action.  In reversing the district court's grant of summary judgment for the defendant, the Second Circuit held that, "by shelving items above eye level, Home Depot intentionally arranged the premises in a manner likely to distract [the plaintiff's] attention away from patent dangers on the floor, thereby creating a foreseeable risk of harm from an otherwise readily visible condition." *Glassberg v. Staples the Off. Superstore E., Inc.*, No. 08-CV-2132, 2010 WL 3924682, at *6 (E.D.N.Y. Sept. 13, 2010) (describing the holding of *Michalski*), *report and recommendation adopted*, 2010 WL 3909206 (E.D.N.Y. Sept. 29, 2010).  Moreover, in *Michalski*, still photographs of the accident also indicated that the dangerous condition may have been obscured, *see Michalski*, 225 F.3d at 122—again, an issue not present here.

In sum, given the totality of the evidence before the Court, Plaintiff has failed to establish that there exists any genuine dispute of fact that the cause of her accident was not open and obvious.

b.  Inherently Dangerous

"[W]hether a condition is not inherently dangerous, or constitutes a reasonably safe environment, depends on the totality of the specific facts of each case." *Russo v. Home Goods, Inc.*, 990 N.Y.S.2d 95, 97 (App. Div. 2014).  "In assessing inherent dangerousness, the Court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony." *Chaney*, 115 F. Supp. 3d at 386–87 (citations omitted).[6]

Because this determination, like the open and obvious determination, "depends on the peculiar facts and circumstances of each case," it "is generally a question of fact for the jury[.]" *Trincere v. County of Suffolk*, 688 N.E.2d 489, 490 (N.Y. 1997) (citation and quotation omitted). But that is not to say that summary judgment is always inappropriate; indeed, "numerous New York cases have found that display racks are 'open and obvious and not inherently dangerous' conditions and have granted summary judgment to defendants." *Goncalves v. Target Corp.*, No. 08-CV-1317, 2010 WL 11651634, at *3 (E.D.N.Y. Sept. 16, 2010) (collecting New York Supreme Court, Appellate Division as well as New York Supreme Court cases) (report and

---

[6] Additionally, because New York courts often adjudicate the question of openness and obviousness simultaneously with the question of inherent danger, at least one New York appellate court has incorporated the aforementioned open and obviousness factors to the inherently dangerous inquiry. *See Clark*, 921 N.Y.S.2d at 274 (citing "dim lighting and the unusual way in which certain furniture was placed" as factoring into whether a condition was "inherently dangerous" as well as whether it was "open and obvious").

recommendation); *see also Chiranky v. Marshalls, Inc.*, 708 N.Y.S.2d 699, 700 (App. Div. 2000) (affirming the Supreme Court's grant of summary judgment to the defendant because a "mobile clothes rack . . . was not an inherently dangerous condition"); *Reuscher v. Pergament Home Centers, Inc.*, 669 N.Y.S.2d 232, 233 (App. Div. 1998) (reversing the Supreme Court's denial of the defendant's motion for summary judgment, because "the presence of the display in the aisle did not constitute an inherently dangerous condition").

In this Action, Defendants argue that the display rack that caused Plaintiff's accident was not inherently dangerous. (*See* Defs.' Mem. 10–13; Defs.' Reply Mem. 5–7.) Plaintiff replies that there remains a material issue of fact in dispute regarding the inherent dangerousness of the display insofar as the metal bar or bars "protruded out of the side of the display," (Pl.'s Mem. 12), that the display and its protrusion were "negligently placed . . . in a busy aisle," (*id.* at 13), and that it "affixed bars at the base of the display and hidden in a gap between displays outside the view of a person approaching from the main aisle," thereby "creat[ing] a trap for the unwary," (*id.*).

As discussed *supra*, the Court cannot rely solely on Plaintiff's deposition testimony to defeat a motion for summary judgment where the movant has met its prima facie burden. *See Wheeler v. Kolek*, No. 16-CV-7441, 2020 WL 6726947, at *8 (S.D.N.Y. Nov. 16, 2020) ("[A] nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." (quoting *Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016)). Once again, even if the Court could rely solely on Plaintiff's deposition, her arguments would nonetheless fall short.

Plaintiff attested in her deposition that there was "no room anywhere" to walk through the space between displays. (Silvestri Depo Tr. 51:8–18.) Plaintiff also attested to the fact that

she was "turning into" the gap between displays in which the accident occurred, (*id.* at 81:7–83:14). Plaintiff also stated that she would not have walked through the aisle in question if she had seen any dangerous condition or obstruction. (*Id.* at 96:21–22.) Finally, Plaintiff testified that the bars were "sticking out from the display." (*Id.* at 79:25–80:3.) Plaintiff based her arguments as to the condition's dangerousness on these facts. (*See* Pl.'s Mem. 9 (citing Plaintiff's accident as a result of "a metal bar apparently affixed to and protruding from the base of the display"); *id.* at 12 (citing Plaintiff's accident as a result of the fact that the protruding bars "would have been hidden from view until the Plaintiff turned to that gap").)

Yet contrary to Plaintiff's arguments in her motion papers regarding these facts, Plaintiff also conceded in her testimony that she did not observe these metal bars sticking out beyond the display itself into the aisle, (Silvestri Depo Tr. 69:14–16), and that she could not know whether it was sticking out prior to her accident, (Defs.' 56.1 ¶ 8; Pl.'s 56.1 Resp. ¶ 8). This also comports with Brooks' deposition testimony and declaration, which confirmed that there were no "merchandise displays set up . . . that had any kind of metal feet or legs sticking out," (Not. of Mot. Ex. E, at 21:6–14 (Dkt. No. 30-6)), that no patron or Kohl's employee reported such a tripping hazard to Brooks, (Not. of Mot. Ex. G ¶ 7 (Dkt. No. 30-8)), and that Brooks herself did not observe any tripping hazard in the store after learning about Plaintiff's accident, (*id.* ¶ 8). Moreover, despite initially stating that she did not "believe" she "went past that display" on which she tripped, (Silvestri Depo Tr. 91:9–12), she then conceded, "yes, I past [sic] the display . . . , you're right" and that she "was looking at the items" on that display, (*id.* at 92:14–16). That Plaintiff testified as having previously walked past the very display that she then alleges was hidden and seen the items that were previously distracting substantially undercuts her claim, to the extent the Court could even credit her unsubstantiated deposition. In sum, the evidence

"compels a single conclusion," namely that the display and purported metal bars that caused the accident were not inherently dangerous. *Chaney*, 115 F. Supp. 3d at 387 (citing *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (App. Div. 2014)).

Because "a landowner has no duty to protect or warn against open and obvious conditions that are not inherently dangerous," Defendants are entitled to summary judgment with respect to their duty to warn. *Weiss v. Half Hollow Hills Cent. Sch. Dist.*, 893 N.Y.S.2d 877, 878 (App. Div. 2010).

### 2.  Duty to Maintain Safe Premises

"The Second Circuit and New York courts have recognized that the fact that an allegedly hazardous, defective, or dangerous condition may be open and obvious does not in and of itself bar liability." *Niles*, 2015 WL 6674833, at *3.  Indeed, "while the fact that a condition is open and obvious may relieve a landowner from a duty to warn, a landowner is never relieved of the general duty to maintain reasonably safe premises at all times." *Glassberg*, 2010 WL 3924682, at *6; *see also Borley*, 22 F.4th at 82 ("'[E]ven if a hazard qualifies as open and obvious as a matter of law,' such a finding 'merely eliminates the property owner's duty to warn of the hazard, but does not eliminate the broader duty to maintain the premises in a reasonably safe condition.'" (quotation marks and italics omitted) (quoting *Aberger v. Camp Loyaltown, Inc.*, 142 N.Y.S.3d 528, 532 (App. Div. 2021))); *Boutsis v. Home Depot*, 371 F. App'x 142, 144 (2d Cir. 2010) (summary order) ("[E]ven if the danger of this action were open and obvious, this merely eliminates the property owner's duty to warn and does not eliminate its duty to maintain its premises in a reasonably safe condition.").

Where a property's condition that caused a visitor to slip and fall is "open and obvious" and "not inherently dangerous as a matter of law," New York courts have found that the property

owner "did not breach its duty to maintain its property in a reasonably safe condition." *Plis v. N. Bay Cadillac*, 773 N.Y.S.2d 451, 452 (App. Div. 2004); *see also Gallo*, 948 N.Y.S.2d at 661 (affirming grant of summary judgment for the defendant on negligence claims where "[t]he defendants made a prima facie showing that [the condition] . . . was not an inherently dangerous condition . . . and . . . open and obvious," because "a landowner has a duty to maintain its premises in a reasonably safe manner . . . [but] there is no duty to protect . . . against an open and obvious condition which, as a matter of law, is not inherently dangerous"). Moreover, where a court finds a condition open and obvious and not inherently dangerous, the property owner's notice of the condition is immaterial insofar as it does not constitute an unsafe condition about which the property owner should be on notice. *See Glassberg*, 2010 WL 3924682, at *6 (granting summary judgment for the defendant, rejecting the plaintiff's argument "that a factual dispute exists as to whether [the property owner] created the condition that caused the plaintiff's fall" because "it did not constitute an unsafe condition"). Having concluded above that the obstruction at issue in this Action was open and obvious and not inherently dangerous, the Court follows suit. *See Varon*, 998 N.Y.S.2d at 434 (affirming grant of summary judgment for the defendant on negligence claims where "the defendant established its [prima facie] entitlement to judgment as a matter of law by submitting evidence that the [complained of condition] was open and obvious and not inherently dangerous," because "a landowner has a duty to maintain its premises in a reasonably safe manner . . . [but] has no duty to protect or warn against an open and obvious condition which, as a matter of law, is not inherently dangerous"); *Schiavone v. Bayside Fuel Oil Depot Corp.*, 942 N.Y.S.2d 585, 585–86 (App. Div. 2012) (affirming grant of summary judgment on the same grounds); *Rao-Boyle v. Alperstein*, 844 N.Y.S.2d 386, 387 (App. Div. 2007) (same); *see also Bellini v. Gypsy Magic Enterprises, Inc.*, 978 N.Y.S.2d 73, 74–76

20

(App. Div. 2013) (reversing the New York Supreme Court's denial of summary judgment because the defendant established its prima facie case that the complained-of condition was open and obvious and not inherently dangerous and plaintiff had not raised a triable issue of fact refuting it); *Nelson v. 40-01 N. Blvd. Corp.*, 943 N.Y.S.2d 216, 217 (App. Div. 2012) (same); *Losciuto v. City Univ. of New York*, 914 N.Y.S.2d 296, 297–98 (App. Div. 2011) (same); *Neiderbach v. 7-Eleven, Inc.*, 868 N.Y.S.2d 91, 92 (App. Div. 2008) (same).

## III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 30), enter judgment for Defendants, and close this case.

SO ORDERED.

DATED:      July 27, 2022
            White Plains, New York

_____
KENNETH M. KARAS
United States District Judge